### FULTON *v.* LYDECKER *et al.*

(*City Court of New York, General Term.* December 17, 1891.)

CARRIERS OF GOODS—CONVERSION BY MISDELIVERY—DEMAND.

In an action against carriers for conversion of goods received by them from plaintiff for delivery to a third person, defendants admitted that they had parted with and never regained possession of the goods. *Held* that, the only issue being whether the delivery by them was rightful or wrongful, a demand upon them for the return of the goods was not necessary to fix the conversion, if there was a misdelivery.

Appeal from trial term.

Action by Robert Fulton against Garret P. Lydecker and others for conversion. At the trial the complaint was dismissed, and judgment for defendants was entered thereon. Plaintiff appeals from the judgment. Reversed.

Argued before VAN WYCK, FITZSIMONS and McCARTHY, JJ.

*Joseph H. Williams,* for appellant. *Wm. B. Ellison,* for respondents.

VAN WYCK, J. This action is for the conversion of a ton of wrapping paper. The plaintiff had orally agreed to sell and deliver to Cook & Smith, at No. 23 Park place, New York city, the paper, for $90. The title of this property undoubtedly remained in the plaintiff until such delivery was so made. The defendants, common carriers, admit that they received the paper from the plaintiff for the purpose of delivering the same as aforesaid. The plaintiff, when first informed by Cook & Smith that they had not received the paper, immediately communicated this information to defendants, who still insisted that they had duly delivered the same by one of their drivers, and sent this driver, with plaintiff, to the establishment of Cook & Smith, for the purpose of having him identify the persons to whom he had made the delivery. The driver was brought into the presence of all the employes of Cook & Smith, and given every facility, but failed to identify any one as the person to whom he had made the delivery. The defendants, however, still insisted that they had rightly made the delivery to Cook & Smith, and informed plaintiff that they did not have the paper in their possession, but had so delivered it; and plaintiff, on the other hand, claimed that it had not been so delivered, and demanded of the defendants the paper, or a settlement for the same. The defendant Lydecker testified that "before this action was brought, Mr. Britton, [defendants' book-keeper] spoke to me in regard to Mr. Fulton's demand of this paper. I also remember that Mr. Williams, plaintiff's counsel, spoke to me in regard to the paper and the goods delivered, etc., and asked me for a settlement of the claim." The plaintiff produced both members of the firm of Cook & Smith, and their receiving and assistant receiving clerks, all of whom testified that the paper had never been delivered, nor had they ever heard of any attempt to deliver the same, until the controversy about the delivery thereof arose. The only evidence by defendants as to the rightful delivery was given by Edleman, their driver, whom they had deputed to make the delivery, and he was allowed to testify, against plaintiff's objection and exception, that he took the paper, in his wagon, to the sidewalk in front of No. 23 Park place,—the fourth floor of which was occupied by Cook & Smith,—and as follows: "I hollered up the hatchway to Smith & Cook, and got no answer, and, looking around, I saw a speaking tube leading from the hatchway to their floor, with their name over the top of it. I whistled through the tube, and got an answer, 'Hello!' and I said,

' Hello! I have got some paper down here for you.' I received an answer, ' All right;' and I said, ' Hurry up; I want to get away.' " And he further testified that in a few minutes thereafter two boys, in their shirt-sleeves, came down, and "when I asked them if they were employed by Smith & Cook, they simply told me, ' Yes;' " and that they told him to take the paper from the wagon and place it underneath the stairway of the elevated railway station, which was directly in front of the doorway of No. 23 Park place; and that these two boys and a strange carman, who happened to be there, gave him a helping hand to pile the paper underneath the stairway. Now, even allowing this testimony as to the statements and acts of these two boys to stand as properly admitted, and as tending to prove delivery, it must be remembered that the evidence given by Cook & Smith and their clerks—that neither of them had authorized these boys to receive the paper, or had sent them down, and that neither of them had ever heard of this delivery or attempted delivery—raised a disputed question of fact as to whether the paper had been delivered or not; and the driver himself, after ample opportunity, failed to identify any of the employes of Cook & Smith as either of these boys. This disputed question should have been submitted to the jury.

At the close of the evidence the court granted a motion to dismiss "upon the ground that there is no demand proven," to which plaintiff duly excepted. The defendant Lydecker testified that before this action his book-keeper had informed him of plaintiff's demand for the paper, and that plaintiff's counsel had spoken to him in regard to the paper, and asked him for a settlement of the claim. Was this not a sufficient demand in this case, if any was necessary? It was conceded that at the time when the plaintiff and his counsel demanded the paper, or a settlement of the claim, the defendants did not have the paper, but had parted with the possession thereof, for they expressly claimed that they had delivered it to Cook & Smith. No demand was necessary to fix the conversion, for, if they had so delivered it, no demand could render them liable as for a conversion; but if they had left it with strangers, in the street, they would, the very moment they so left it, become liable as for a conversion, and any subsequent demand would be mere idle form, and especially since no claim is made that they had recovered it, and since they insist that they have never since seen or heard of the paper. The defendants having admitted that they had parted with and never regained possession of the paper confided to them to be delivered to a person designated by plaintiff, the only issues to be tried were whether they had delivered the paper rightfully or wrongfully, whether to Cook & Smith or to strangers whom their driver had met in the street; and the determination of these issues should have been left to the jury, whose verdict should have been for plaintiff, provided they should have determined that no delivery had been made to Cook & Smith, and that the defendants had delivered the paper to two strange boys and a carman, whom their driver had met in the public highway. A common carrier, who receives goods to carry and deliver to a person designated by the bailor, becomes liable as for a conversion the moment he makes an unauthorized delivery of the goods to another than the person so designated; and when he admits that he has made such misdelivery, but insists that it is a rightful delivery, no demand is necessary to fix the conversion or to maintain an action in tort. The judge writing in *Syeds* v. *Hay*, 4 Term R. 260, says: "If one man who is intrusted with the goods of another put them into the hands of a third person, contrary to orders, it is a conversion." This case is an old and leading authority, and Chief Justice CHURCH, writing in *Laverty* v. *Snethen*, 68 N. Y. 525, after citing this case, says: "This case has been repeatedly cited by the courts of this state as good law, and has never, to my knowledge, been disapproved." Judgment reversed and new trial granted, with costs to appellant to abide the event. All concur.